UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

EMISSIVE ENERGY CORPORATION CA No. 06-401 S

v

PROVIDENCE, RI
APRIL 24, 2007

INNOVAGE, INC.

BEFORE MAGISTRATE JUDGE LINCOLN D. ALMOND

APPEARANCES:

FOR THE PLAINTIFF:

BRYON LEE McMASTERS, ESQ.
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place
Suite 1200
Providence, RI 02903
401-455-0701

FOR THE DEFENDANT:

MICHAEL H. FELDHUHN, ESQ.
56 Pine Street
Suite 200
Providence, RI 02903
401-331-6600

APRIL 24, 2007- MORNING SESSION

THE COURT: Good morning. We're here today in the matter of Emissive Energy Corporation vs Innovage, Incorporated, et al, Civil Action 06-401. We're here today for argument on defendant's motion to dismiss for lack of personal jurisdiction and also on the plaintiff's request for jurisdictional discovery. Will counsel who are here today identify themselves for the record, please.

MR. FELDHUHN: Michael Feldhuhn for the defendant Merchsafari, LLC.

MR. McMASTERS: Bryon McMasters for plaintiff Emissive Energy Corporation.

THE COURT: All right. I've read through the papers. This is a fairly straightforward jurisdictional issue so I don't think you need to repeat everything in your papers. I'll hear first from the defendant, if you could just outline, (a) why you believe, just generally, why you believe there is no personal jurisdiction, and then (b) why you believe the plaintiff should not be allowed some limited jurisdictional discovery.

MR. FELDHUHN: Your Honor, thank you. Particularly in the reply that we filed in response to --

THE COURT: I did review that. So you believe

they need to have shown some factual basis for personal jurisdiction before they should be allowed to have jurisdictional discovery?

MR. FELDHUHN: The First Circuit seems to be pretty clear that there has to be what they call a colorable basis for personal jurisdiction, and I actually -- I usually represent plaintiffs in these infringement cases, so I'm actually on the other side of it, and I'm actually worried that I may be on the other side of it, you know, six months from now in some other case. But I think there needs to be an investigation before the suit is filed that there's some connection to Rhode Island. I've had a number of cases against out-of-state defendants where I could show an advertisement in Rhode Island, they went to a trade show in Rhode Island, there were meetings in Rhode Island, there were e-mails in Rhode Island, something that would get your foot in the door. I had a trademark case involving sailboats. I could show that they went to the Newport boat show every year. I'm not sure that would have been enough to establish jurisdiction but I thought it was enough for a colorable basis.

Simple things that one can do is order the infringing product and see if they ship it to Rhode Island. I've done that in a number of cases, and I

think -- again, it's not dispositive. One sale in Rhode Island may not be enough, but it's nice to show that. I had a case against a Florida department store and I wasn't sure that there was jurisdiction here, so the client ordered the infringing product from five different stores around the country and every one of them was happy to ship to Rhode Island. So I felt at that point there's enough for a colorable basis for jurisdiction.

THE COURT: But here a Rhode Island resident could have ordered it. It was an interactive website, wasn't it? You could go on the web and order one of these flashlights.

MR. FELDHUHN: We don't know. Theoretically, yes. They say it's an interactive website and theoretically a Rhode Island resident could have placed an order. We submitted an affidavit by the owner of the company that says they didn't. There have been no sales in Rhode Island.

The thing that I wanted to focus on in the complaint, the jurisdictional allegation is Paragraph 15 of their complaint, and they said the Court has jurisdiction over Merchsafari. Inasmuch as Merchsafari offers products for sale on their interactive website including those bearing the accused mark, that are

directed to consumers and retailers in this judicial district, and are readily accessible to internet users in the judicial district. It's interesting because in their papers, they sort of back off from that first part. They offer parts for sale that are directed to consumers and retailers in this district. What they're actually saying is, well, what evidence do you have of that. And they've got none. And again, you could have advertising --

THE COURT: I guess that depends on how you define directed. They put it out there on the web, somebody from Rhode Island could go and order it. That, in theory, could have happened. You're saying you need to have something else, a special here, we're targeting Rhode Island residents.

MR. FELDHUHN: Sure, and there are a million things you could have. You could have -- they could be offering their products on the Projo.com web page to Rhode Islanders. They could be advertising on Channel 10. Again, they could be selling the products now and I'm lying, but they talk about retailers, directed at retailers. What retailers? They could, you know, if they came in and said, well, we purchased the product at Benny's on North Main Street, again that would be some evidence of what they're saying. But they're really

backing off. Now they're going to say -- now they're really saying they have an interactive website, somebody could have placed an order. The important thing is I don't think that would be enough, anyway. One isolated sale, or even a few isolated sales, I don't think would be enough to satisfy the due process requirements. There needs to be more substantial contact with Rhode Island.

THE COURT: Wouldn't those sales be related to the claims in the litigation because if they're correct those sales would be sales of infringing products within the forum state. That's different than if you have a contract dispute with a company in Illinois and they happen to sell an unrelated product here in Rhode Island, that might not be enough, but wouldn't -- if they actually sold infringing products to Rhode Islanders, I think that would be a different story.

MR. FELDHUHN: And what we have is, the only evidence is that they didn't. We have the affidavit by Merchsafari that they did not do that.

THE COURT: Why should the Court and the plaintiff simply take the word of -- I forget the gentleman's name -- Mr. Merchsafari, for lack of a better name, the individual who signed the affidavit, why should they take his word for it that no sales were

ever made?

MR. FELDHUHN: Well, I guess it's a question of whose burden it is. It's the plaintiff's burden, I submit, under Rule 11, to do an investigation and to find the facts before the suit is filed that would provide some evidence, and they didn't do that. They provided no evidence. We submitted the affidavit of Mr. Bowman from Merchsafari.

THE COURT: That's his name.

MR. FELDHUHN: I've always believed that this was the case, and I always adhered to this. I don't think that a plaintiff can sue an out-of-state corporation and then say, you know what, give me 60 or 90 days to poke around and I'll find some connection to Rhode Island. I don't think that's appropriate. I think you have to have some, again as the First Circuit said, some colorable basis before you file the suit.

THE COURT: Doesn't this get confusing now where we get into these web based assertions of jurisdiction? The cases seem to be clear that a passive website is not enough. An interactive website may be, but it depends on the level of interaction. So if you have an interactive website, which seems to be the case here, there could be certain levels of interaction and transactions which may push it over the line to provide

for jurisdiction. So if they have an interactive website, how are they going to get the information to establish if there have been sales to Rhode Island consumers? Just by ordering it themselves? I mean, they don't have access to your client's sales records. For all they know, there's an interactive website and a thousand Rhode Islanders have bought flashlights. They wouldn't know that until they had at least some initial discovery.

MR. FELDHUHN: Well, they found one. They found one flashlight in Rhode Island, or they found one store selling the flashlights. Again, the question of which goes first, the cart or the horse. The Zippo case which your Honor refers to about the sliding scale when you're dealing with websites, was important when it came out because most of us didn't even know what the internet was. So it explains to people like me that there's different kinds, there's a passive or static site, there's an interactive site. But now everybody's got an interactive site. I mean any retailer, anybody that's in the business of selling products, has an interactive site. So the rule that they're advocating, and maybe it should become the law, is that there's nationwide jurisdiction when you're dealing with somebody that sells products from an interactive website. I don't

think that's the rule, and there are policy arguments for why that might be a good rule, but I don't think that is the current state of the law.

THE COURT: Thank you. Let me hear from the plaintiff.

MR. McMASTERS: Your Honor, I think that you've really hit the nail on the head when you stated that this was pretty much an infringement suit, and when you look at the factors related to jurisdiction, you're talking about whether the plaintiff's claim arises -- relates to the defendant's forum state activities. Now in the Swarovski case versus Euro Optics, in the District of Rhode Island here, it says specifically District Courts in this circuit have held that trademark infringement means via a continuously available internet website satisfies the related requirement. So I think it's pretty clear as to that first element. The nature of the cause of action here is very relevant. We're not talking about a contract, negotiations to enter into a contract. We're talking about trademark infringement. Any internet user in Rhode Island can put any search into a web browser that would bring up these infringing products and you could view them in Rhode Island. That's not to say that a purchase has occurred, but that's to say that you can look at this. If you're

shopping for my client's product, and you put that into a search engine, this Merchsafari's internet website will come up.

And then the second tact then is whether plaintiff purposely availed itself of conducting activities in the forum state.

THE COURT: Let me -- I mean, you're getting to the merits of the dispute. My reading of your papers is that you asked for more time to respond to the merits of the jurisdictional claim because you wanted to conduct discovery, and my first question when I read that was what is it that you would obtain in discovery, because I'm guessing if you serve interrogatories on Merchsafari, Merchsafari is Mr. Bowman, there's no one else, he would sign interrogatory responses that would essentially -- his affidavit seems to cover all of the issues that would be relevant to jurisdiction. I'm sure he'd say the same thing in his sworn interrogatories. I don't think he would contradict himself and perjure himself. If you ask for production of documents, I'm not sure what documents you'd get that would be related to this that would help, or if you deposed him, I'm sure he would answer the questions similar to what's in his affidavit. So what is it that you, (a) what method of discovery are you looking for, and (b) what is it that

you believe is out there that will shed more light on this question?

MR. McMASTERS: Well, the method of discovery would be interrogatories and document requests, and what we would be seeking in those, that's the part (b) of your question, would be Merchsafari is -- holds itself out as a wholesaler of these products. In his affidavit, Mr. Bowman -- you know, it's pretty bare bones and not surprisingly, fairly self-serving, and we would be permitted then to direct the inquiry and we would be able to pry into who the retailers are that these products are being sold to. Simply because a retailer may not be based out of Rhode Island, that retailer may sell the product into Rhode Island, you know, perhaps a Massachusetts company that's on the border, perhaps, you know, other retailers. I know in the course of investigating this case there are a number of other retailers who are buying from wholesalers similar to Merchsafari. Now I haven't found any of the retailers who have bought from Merchsafari, however, it's not unreasonable to believe that Merchsafari is selling to other internet retailers who then are selling those products into -- placing them in the stream of commerce and then coming into Rhode Island.

THE COURT: All right.

MR. McMASTERS: To get back to where I was heading, and I agree with your Honor, I didn't want to get too deeply into the merits but I think it is relevant to investigate what the factors are for establishing jurisdiction because in looking at what a colorable basis is, I don't know that it's entirely clear from the case law. There's not a lot of jurisdictional --

THE COURT: If you find nothing beyond what's in Mr. Bowman's affidavit, you don't find any wholesale shipments to retailers who might reasonably sell into Rhode Island, you find no other evidence, no other contacts with Rhode Island to support your argument, and it turns out that what Mr. Bowman's affidavit sets forth is pretty much the whole story, what's your position then? Do you believe there's jurisdiction based solely on what's in the affidavit?

MR. McMASTERS: Your Honor, as Mr. Feldhuhn said, there's certain policy arguments that would state that, you know, jurisdiction should be founded against internet websites that's selling. This individual is -- obviously has a website with the intent of getting his name out there and being able to cast as wide a net as possible as to, you know, bring in retailers to sell his products to. My belief is that we can make a strong

argument that jurisdiction may still lie, under the circumstances. However, after further investigation, certainly I think the state of the case law, as you indicated, is that there does seem to be this continuum, and if what he indicates is very similar to his affidavit, then we would give that a serious look and in all likelihood we may concede that jurisdiction is not founded under currently existing case law.

THE COURT: All right. Anything further?

MR. McMASTERS: Nothing further, your Honor.

MR. FELDHUHN: Your Honor, if I may add a couple of points.

THE COURT: You may.

MR. FELDHUHN: My brother cites the Report and Recommendation by Magistrate Judge Hagopian in that Swarovski case. Although he doesn't go on to say that the Magistrate Judge found that there was no jurisdiction in that case, and there's some specific language in there that indicates that the fact that there's a web page that could be accessed by Rhode Islanders isn't enough. So in that case there was no -- no personal jurisdiction.

One of the questions that your Honor was getting at which I don't think my brother's fully answered is what's the discovery? I mean, if the discovery is we

want all of your sales records for the last five years, is that a reasonable discovery request? I mean, there's proprietary information, there's all sorts of information that has nothing to do with this. If the request is that we want all sales records relating to sales to Rhode Island, well, that would be pretty easy because consistent with the affidavits I think there would be none. Same with interrogatory answers. But if it's an overbroad request for all sales records, or list of all customers, or list of all vendors, that's proprietary information, but we're going to end up getting into a discovery fight, I think, if discovery is allowed, and again, it's in a case where they haven't made this colorable claim for personal jurisdiction.

The one other point I wanted to add is this case is a dispute between Emissive and Innovage over the trademark. Merchsafari is really a peripheral defendant. They had nothing to do with the trademark, they had nothing to do with picking the name or using the name. They're a retailer. I think in that case, it is a less compelling argument for hauling them into a district court. The key parties to this lawsuit are Innovage and Emissive, those two companies. It's a case about who has the trademark rights in the Innova name and the Innovage name.

THE COURT: But there can be some liability that falls on a retailer?

MR. FELDHUHN: Sure, sure, but it's very --

THE COURT: The question I have, putting on my judicial economy hat, is that this dispute, this dispute, there wasn't an argument about whether this case was going to be here, now it's clear it's going to be here, and you're right, the primary battle may be Emissive and Innovage. Now you're saying you're here, your client is here, you want us to bump your client out. Your client can be sued in U.S. District Court in Illinois, and then we have a suit going on here and then a subsidiary fight about the same thing with related parties happening in Illinois. How does that make any sense?

MR. FELDHUHN: Well, under the juridical economy concept, it's not the most economical thing to do but again it goes back to whether or not there's nationwide jurisdiction in trademark cases, and it's clear that there isn't. The fact that Merchsafari is in Illinois, one person Illinois limited liability company, that doesn't have contact with Rhode Island, they don't get hauled in here because there happens to be a case properly pending in Rhode Island. They still have a right to say, hey, this violates due process. We can't

be sued in Rhode Island. And it happens all the time. I mean, it's often the case that a Rhode Island resident has a copyrighted trademark infringement claim. If it can't bring it in this court, they have to bring it in the other court where the infringer is located, unless they can prove, you know, contacts. And again if you read Magistrate Judge Lovegreen's Report and Recommendation it has to be a fairly substantial contact. He in that report talks about isolated contacts may not be enough, a single sale may not be enough, and also you have to look at it at the time the complaint was filed. What were the facts when they filed the complaint. And the truth is they didn't have any facts to support their allegation of personal jurisdiction.

THE COURT: All right. This is a question to you, Mr. McMasters, if you could again tell me because I don't, and that was one of the concerns I have, is I don't want to grant you, if I do agree with you, that you have some entitlement to jurisdictional discovery, I don't want to open a can of worms here where I have an ongoing dispute about the scope of that discovery because they've challenged personal jurisdiction so it's an exception for me. If they're right, they shouldn't be in this court at all and shouldn't have any

obligations. So they would have a legitimate objection to any forum discovery which they've raised. So if I grant you the exception and allow you some limited discovery, you said it would be interrogatories and document requests, but the only example you gave me was whether they sold wholesale to a Massachusetts retailer who may have sold to a Rhode Islander. Isn't that going to open up discovery to all of their sales information?

MR. McMASTERS: Your Honor, certainly we could limit discovery to, you know, who their retailers are within a limited period. I know the affidavit indicates that they've sold nothing into Rhode Island, and if we assume that the interrogatory answer is going to be the same then I think that we need to focus specifically on who their sales are to allow us to then, because then I think the inquiry would shift to the retailers. I don't think that it can be expected that Merchsafari would know who those retailers are then selling to. I think you would allow us at that point to identify --

THE COURT: Well, that's my question. Do we then have -- you find out who they are and then you try to serve subpoenas on those folks to conduct further discovery, and then they come into court to move to quash, or you have to go -- they go to District Court in Massachusetts to move to quash those subpoenas, and you

still -- this is all based on suspicion. You haven't shown me anything other than they have an interactive website in terms of contacts with Rhode Island.

MR. McMASTERS: It's true that, you know, at this point we don't have a good sense of who the retailers may be and I don't think that's something we could have found out prior to filing this suit by, for instance, ordering a product as Mr. Feldhuhn suggested. I think if they're a retailer that may be the case, but here unfortunately I think that's going to have to be the process. I think in terms of proprietary information, you know, we can certainly agree to redaction as to anything that may be confidential to Merchsafari, but I think, you know, having to know who those retailers --

THE COURT: Well, redaction, I mean redaction isn't really going to help because you're in a similar business so your client would probably like to sell to people his client sells to, so once you find out the names of those individuals, that's the information that's -- if you redact the name, there's no answer to the discovery.

MR. McMASTERS: He could also agree to a protective order, you know, that would limit the turning over that information to our client.

THE COURT: All right. I'm going to take the

matter under advisement. I will rule on this fairly quickly. I know that this case has been kicking around for a little while so this issue needs to be dealt with. It's been referred to me by Judge Smith for a Report and Recommendation. I will give him a Report and Recommendation as to whether or not the motion to dismiss should be granted based on the record as it stands or whether I am going to agree that the plaintiff should be granted a period of time to conduct jurisdictional discovery. Then if I do that, I'll take the matter further under advisement, and after that discovery allow the parties to supplement their papers and then issue a Report and Recommendation to Judge Smith on the issue of personal jurisdiction. The Court will stand in recess.

(RECESS)

C E R T I F I C A T I O N

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Joseph A. Fontes

JOSEPH A. FONTES, COURT REPORTER