UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMISSIVE ENERGY CORPORATION,

Plaintiff,

vs.

INNOVAGE, INC., INNOVAGE, LLC, WALGREEN CO., OVERSTOCK.COM, INC., and PHILIP FRANKEN d/b/a AUCTIONATIC STORE,

Defendants.

C.A. NO. 06-401S

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF PROTECTIVE ORDER

Plaintiff, Emissive Energy Corp. ("Emissive"), seeks the entry of a Protective Order (attached hereto as Exhibit A) that adopts a form commonly entered by this Court. *See, e.g., Bowling v. Hasbro*, C.A. No. 05-229S, Protective Order [Dkt. No. 20], attached hereto as Exhibit B. Emissive's proposed Protective Order allows counsel to disclose information to retained independent consultants or experts upon execution of an "Agreement Concerning Protected Material Covered by Protective Order" that mandates his or her intent to be bound by the provisions of the Protective Order. Under Emissive's form of Protective Order, counsel for each party retains those acknowledgements and need not disclose them except as ordered by the Court. This shields the attorneys' trial preparation process from the other party's counsel, who has no legitimate need to know, for example, the identity of non-testifying consultants.

California counsel for Defendants' Innovage, Inc., Innovage, LLC, Walgreen Co. ("Walgreens"), Overstock.com, Inc. ("Overstock") and Philip Franken d/b/a Auctionatic Store ("Franken") objects to this form of protective order that is routinely submitted by consent of all

counsel for entry by the Court. Defendants propose a Protective Order that improperly requires the parties to identify potential testifying and non-testifying experts and contemplates an unwieldy process before a non-testifying consultant can review confidential documents produced in discovery. (A true copy of Defendants proposed form is attached as Exhibit C). Defendants' proposed form would also identify for the other side who trial counsel designated to see which precise information. (Exhibit C, ¶4.) Because Defendants' proposed Protective Order imposes disclosure requirements far outside Fed. R. Civ. P. 26 and would essentially preview each side's trial strategy in advance of this Court's Scheduling Order that dictates the timing of expert disclosures [Docket No. 58], Emissive opposes Defendants' form of Protective Order and respectfully requests that the Court enter its form of Protective Order.

## FACTS

This is a trademark infringement case. In or about May of 2006, Emissive learned that Innovage, Inc. is manufacturing, marketing and selling, through Walgreens retail stores and elsewhere, an LED flashlight set bearing the INNOVAGE label (the "Accused Mark"). On September 7, 2006, Emissive filed this action against Innovage, Inc. and Walgreens, alleging federal trademark infringement, federal unfair competition and false designation of origin and common law unfair competition against both Innovage, Inc. and Walgreens. (*See* Second Amended Complaint.) After filing the Complaint, Emissive learned that additional companies are selling infringing products denominated with the Accused Mark. Accordingly, on December 11, 2006, Emissive filed its First Amended Complaint to add Defendants Overstock and Franken and Merchsafari, LLC. Emissive also added Harrison Brothers, Inc. d/b/a Good Buy Guys, Denrig, Inc., Mary Sedivy d/b/a Aspen Country Store, Merchandise For You, Northern Mountain Supply, all of which later stipulated to Consent Permanent Injunctions. On June 10, 2008,

Emissive filed a Second Amended Complaint to add Innovage, LLC, Innovage, Inc.'s apparent successor-in-interest, as a defendant.

On June 24, 2008, counsel for Emissive forwarded a commonly used, proposed draft Stipulated Protective Order to Defendants' local counsel and California *pro hac vice* counsel. (A true and correct copy of the draft Stipulated Protective Order and cover correspondence is attached hereto as Exhibit D.) Over two weeks later and five days prior to the due date for Defendants' discovery responses, on July 9, 2008, California counsel replied that he does not agree to the form of the Stipulated Protective Order, listed a number of vague objections and emailed his own form of protective order that is not typical in this District, particularly as to experts.[1] Accordingly, Emissive could not agree to Defendants' form of order. The parties have met and conferred, but have not been able to resolve the dispute. Emissive, therefore, moves for the entry of its Protective Order (Exhibit A.)

## ARGUMENT

Federal Rule of Civil Procedure 26(c) governs the entry of protective orders:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including…(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

*See also Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir.1986); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir.1988), cert. denied, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989). Here, the parties agree that discovery in this matter will encompass sensitive trade secrets and other confidential commercial information. Thus, the necessity of a protective order is not at issue; rather, the issue concerns the proper form of order.

[1] Defendants' draft protective order appears to be a form used in California courts.

The appropriate form of protection is the protective order attached hereto as Exhibit A.[2] This protective order contemplates two layers of confidentiality, one that allows disclosures to parties, and the other restricted to attorneys and independent experts. In each instance, the person receiving the information would execute an acknowledgement that identifies the information disclosed and expressly binds the recipient to the terms of the Protective Order. Counsel, who would select the documents and recipients as part of a global trial preparation strategy, would retain the signed acknowledgements to avoid providing the other side with a road map of witness and case preparation. This form of protective order also avoids allowing an adversary a preview into and, essentially, a veto of the expert preparation and retention process, involvement that is unwarranted in light of the expert disclosure requirements of Fed. R. Civ. P. 26.

Emissive's form of protective order adequately protects the parties. By its terms, counsel must make all reasonable efforts to ensure compliance with the protective order, including requiring all experts to execute the acknowledgement attesting that confidential information will not be used for any purpose other than this litigation. (Exhibit A, ¶ 7). As with any protective order in this and thousands of other cases, failure to comply may constitute contempt, and anyone who signs the acknowledgement may be liable if he or she uses confidential information to gain a competitive advantage. Nothing more is required here.

Nevertheless, Defendants seek the identity of and veto power over Plaintiff's choice of experts. (*See* Exhibit C, ¶ 9.) Such a process lacks any legal basis.[3] Additionally, such a

---

[2] This is substantively identical to the form attached hereto as Exhibit D, but it has been changed from a stipulated form to a Court-ordered form in light of the parties' failure to agree.

[3] To the extent Defendants rely upon unpublished, out-of-district cases, *The Beam System, Inc. v. Checkpoint Systems, Inc.*, 1997 WL 364081 (C.D. Cal. 1997) and *Biovail Laboratories Int'l, SRL v. Abrika, LLLP*, 2007 WL 788840 (S.D. Fla. 2007) , such reliance is misplaced. This is a trademark infringement and unfair competition case. The crucial issue requiring expert testimony is likelihood of confusion. *See* 15 U.S.C. § 1114(a); *see also Beacon*

process would be lengthy and difficult, if not impossible, to implement. Specifically, Defendants' protective order would require that the acknowledgements be provided to the other party at least ten days prior to disclosure to any expert, together with the expert's resume and a written statement setting forth whether the expert has had a prior relationship with (i) the party receiving the protected materials and/or (ii) any company that manufactures and/or sells LED lighting products or has been involved in any commercial or proprietary process to produce LED lighting products. If the producing party objects to disclosure within this ten-day period and no agreement can be reached concerning disclosure, the producing party would have fifteen days to move for an order preventing disclosure.

Defendants propose no standard for disposition of a motion objecting to disclosure of protected information to an expert. The language contained in Defendants' form of order indicates that Defendant is concerned that an expert may not be an "independent expert" (i.e. not currently or formerly employed by a party) and/or be affiliated with a competitor. As to the first concern, Plaintiff's Protective Order (¶ 9) defines an "independent expert" as a non-employee. Thus, there is no reason to disclose the nature of any relationship between a party receiving protected materials and its independent expert because, by definition, there can be no relationship. As to Defendants' second concern, there is no authority for the proposition that an independent expert is unsuitable solely because he or she has worked in the LED lighting industry. Especially since any failure of an independent expert to abide by the terms of the

---

*Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 14 (1st Cir. 2004). The anticipated experts in this case are survey experts opining on likelihood of confusion, not competitor experts opining on whether there was a basis for a copyright claim with regard to a competitor's proprietary software maintained as a trade secret (*Beam*) or opining on drug development and the FDA approval process (*Biovail*). Indeed, Defendants' reliance on *Biovail* is especially perplexing. The issue there was not whether a protective order should require the vetting of experts, but rather, whether a fact witness and employee of a party may qualify as an "independent expert" as defined by the protective order that was already entered. Here, Defendants' proposed protective order does not even include a definition of "independent expert." Emissive's protective order does (¶ 9), and is otherwise wholly consistent with the holding in *Biovail*.

protective order and refrain from using materials for competitive purposes constitutes contempt, axiomatically, there must be some showing of a propensity toward misuse of protected materials before access to protected materials is denied. Yet, Defendants set forth no such criteria in their protective order. In other words, if entered, Defendants' Protective Order would sanction a procedure that allows a party to object to disclosure, seemingly arbitrarily, without providing the Court with any framework for evaluating the merits of the objection.

In addition to the vagueness of the process, the length of the procedure is prohibitive. Even if Court intervention is unnecessary, the process could take up to twenty-five days before disclosure to an expert. If Court involvement becomes necessary, the process, including briefing and a hearing, could expand to two nearly months. Fact discovery closes at the beginning of November. There is no reason to complicate further this litigation with motions practice over the retention of non-testifying consultants and expert witnesses.

Finally, Plaintiff's protective order affords protections not offered by Defendants' form of order. Emissive's protective order imposes a duty upon counsel to make all reasonable efforts to ensure compliance with the order. (Exhibit A, ¶ 8.) Defendants' proposed order does not. Plaintiff's form of order also includes a provision allowing for the correction of an inadvertent failure to designate deposition testimony. (*Id.*, ¶ 3.) Defendants, on the other hand, propose that any failure to designate results in waiver. (Exhibit C, ¶ 12.) Emissive's protective order includes provisions to remedy the inadvertent disclosure of protected materials and the inadvertent production of privileged materials. (Exhibit A, ¶¶ 12-13.) Defendants' protective order is silent on these matters.

In sum, Emissive proposes a protective order that is common and successfully used in this District, whereas Defendants propose an atypical procedure that is unduly complex, costly,

infeasible and would require the disclosure of non-testifying experts contrary to Fed. R. Civ. P. 26. Accordingly, Plaintiff's Motion for Entry of a Protective Order should be granted.

## CONCLUSION

For all these reasons, Emissive respectfully requests that the Court enter the Protective Order appended hereto as Exhibit A.

Respectfully submitted,
EMISSIVE ENERGY CORPORATION
By its Attorneys

/s/ Byron L. McMasters
Craig M. Scott, Esq. (#4237)
Byron L. McMasters, Esq. (#7754)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701

Dated: July 31, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that the within *Memorandum in Support of Motion for Entry of Protective Order* was filed through the ECF system on the 31st day of July, 2008, and will be sent electronically to the counsel listed below who are registered participants identified on the Notice of Electronic Filing or in the manner specified:

Michael H. Feldhuhn, Esq.
56 Pine Street
Suite 200
Providence, RI 02903

Craig McLaughlin, Esq.
O'Connor Christensen & McLaughlin
Trial Division of the Eclipse Group, LLP
1920 Main Street, Suite 150
Irvine, CA 92614

/s/ Byron L. McMasters

H:\Clients\Emissive Energy\Innovage - RI\Pleadings (06-401)\Memo Mot Protective Order.doc